IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

```
                              FILED

                         JUL  1 2016

                    CLERK, US DISTRICT COURT
                         NORFOLK, VA
```

T. PARKER HOST, INC.,

     Plaintiff,

v.

KINDER MORGAN LIQUIDS
TERMINALS, LLC,

       Serve: CT Corporation System, R/A
            4701 Cox Road, Suite 285
            Glen Allen, VA 23060,

KINDER MORGAN BULK
TERMINALS, INC.,

       Serve: CT Corporation System, R/A
            4701 Cox Road, Suite 285
            Glen Allen, VA 23060,

KINDER MORGAN SERVICES LLC,

       Serve: CT Corporation System, R/A
            4701 Cox Road, Suite 285
            Glen Allen, VA 23060,

KINDER MORGAN SOUTHEAST
TERMINALS, LLC,

       Serve: CT Corporation System, R/A
            4701 Cox Road, Suite 285
            Glen Allen, VA 23060,

KINDER MORGAN VIRGINIA
LIQUIDS TERMINALS LLC,

       Serve: CT Corporation System, R/A
            4701 Cox Road, Suite 285
            Glen Allen, VA 23060,

Civil Action No. 2:16cv ___411___
TRIAL BY JURY DEMANDED

**KINDER MORGAN MATERIALS
SERVICES, LLC,**

>    <u>Serve</u>: **CT Corporation System, R/A
>                4701 Cox Road, Suite 285
>                Glen Allen, VA 23060,**

**KINDER MORGAN G.P., INC.,**

>    <u>Serve</u>: **Corporation Service Company, R/A
>                Bank of America Center, 16th Floor
>                1111 East Main Street
>                Richmond, VA 23219,**

**KINDER MORGAN OPERATING L.P. "A",**

>    <u>Serve</u>: **CT Corporation System, R/A
>                4701 Cox Road, Suite 285
>                Glen Allen, VA 23060**

**KINDER MORGAN OPERATING L.P. "C",**

>    <u>Serve</u>: **CT Corporation System, R/A
>                4701 Cox Road, Suite 285
>                Glen Allen, VA 23060,**

**KINDER MORGAN OPERATING L.P. "D",**

>    <u>Serve</u>: **CT Corporation System, R/A
>                4701 Cox Road, Suite 285
>                Glen Allen, VA 23060,**

**KINDER MORGAN TRANSMIX COMPANY, LLC,**

>    <u>Serve</u>: **CT Corporation System, R/A
>                4701 Cox Road, Suite 285
>                Glen Allen, VA 23060,**

**KINDER MORGAN ENERGY PARTNERS,**

>    <u>Serve</u>: **CT Corporation System, R/A
>                4701 Cox Road, Suite 285
>                Glen Allen, VA 23060,**

**KINDER MORGAN TERMINALS,**

> <u>Serve</u>: **CT Corporation System, R/A**
> **4701 Cox Road, Suite 285**
> **Glen Allen, VA 23060,**

**NASSAU TERMINALS LLC,**

> <u>Serve</u>: **CT Corporation System, R/A**
> **1200 South Pine Island Road**
> **Plantation, FL 33324,**

and

**KINDER MORGAN, INC.,**

> <u>Serve</u>: **CT Corporation System, R/A**
> **1999 Bryan Street, Suite 900**
> **Dallas, TX 75201-3136,**

**Defendants.**

## COMPLAINT

Plaintiff, T. Parker Host, Inc. ("TPH"), by counsel, for its Complaint against defendants, Kinder Morgan Liquids Terminals, LLC, Kinder Morgan Bulk Terminals, Inc., Kinder Morgan Services LLC, Kinder Morgan Southeast Terminals, LLC, Kinder Morgan Virginia Liquids Terminals LLC, Kinder Morgan Materials Services, LLC, Kinder Morgan G.P., Inc., Kinder Morgan Operating L.P. "A", Kinder Morgan Operating L.P. "C", Kinder Morgan Operating L.P. "D", Kinder Morgan Transmix Company, LLC, Kinder Morgan Energy Partners, Kinder Morgan Terminals, Nassau Terminals LLC, and Kinder Morgan, Inc., states as follows:

## Nature of the Action

This is an action to prevent the predatory and retaliatory conduct of a large marine terminal owner and/or operator from using its dominant market position to unlawfully squelch its competition by improper and/or illegal means including, but not limited to, violation of the

Shipping Act, 46 U.S.C. § 41106; violation of Virginia Code §§ 18.2-499 and 500; and tortious interference with contract and business expectancies.

<strong><u>Jurisdiction and Venue</u></strong>

1.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332, and 46 U.S.C. § 41306. TPH is a Virginia citizen. Upon information and belief, none of the Defendants are citizens of Virginia. The amount in controversy exceeds $75,000.

2.    The Court has personal jurisdiction over the Defendants pursuant to Va. Code Ann. § 8.01-328.1.

3.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), and 46 U.S.C. § 41306(b)(2).

<strong><u>Parties</u></strong>

4.    Plaintiff T. Parker Host, Inc. is a Virginia corporation, licensed to do business in Virginia, providing full-service ship agency, with its principal place of business in Norfolk, Virginia.

5.    Defendant Kinder Morgan Liquids Terminals, LLC is a Delaware limited liability company, licensed to do business in Virginia, that owns and/or operates marine terminals, with its principal place of business in Houston, Texas.

6.    Defendant Kinder Morgan Bulk Terminals, Inc. is a Louisiana corporation, licensed to do business in Virginia, that owns and/or operates marine terminals, with its principal place of business in Houston, Texas.

7.    Defendant Kinder Morgan Services LLC is a Delaware limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

4

8.     Defendant Kinder Morgan Southeast Terminals LLC is a Delaware limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

9.     Defendant Kinder Morgan Virginia Liquids Terminals is a Delaware limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

10.     Defendant Kinder Morgan Materials Services, LLC is a Pennsylvania limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

11.     Defendant Kinder Morgan G.P., Inc. is a Delaware corporation, licensed to do business in Virginia with its principal place of business in Houston, Texas.

12.     Defendant Kinder Morgan Operating L.P. "A" is a Delaware limited partnership licensed to do business in Virginia with its principal place of business in Houston, Texas.

13.     Defendant Kinder Morgan Operating L.P. "C" is a Delaware limited partnership licensed to do business in Virginia with its principal place of business in Houston, Texas.

14.     Defendant Kinder Morgan Operating L.P. "D" is a Delaware limited partnership licensed to do business in Virginia with its principal place of business in Houston, Texas.

15.     Defendant Kinder Morgan Transmix Company, LLC is a Delaware limited liability company licensed to do business in Virginia with its principal place of business in Houston, Texas.

16.     Upon information and belief, Defendant Kinder Morgan Energy Partners is a limited partnership, with its principal place of business in Houston, Texas and/or the fictitious

name of an entity or several entities doing business as Kinder Morgan Energy Partners, including owning and/or operating marine terminals.[1]

17.     Upon information and belief Defendant Kinder Morgan Terminals is the fictitious name of an entity or several entities doing business as Kinder Morgan Terminals, including owning and/or operating marine terminals.[2]

18.     Defendant Nassau Terminals LLC is a Delaware limited liability company with its principal place of business in Houston, Texas, and operating the marine terminal in Fernandina Beach, Florida.

19.     Upon information and belief, Defendant Kinder Morgan, Inc. is a Delaware corporation and the parent corporation of all Kinder Morgan entities, with its principal place of business in Houston, Texas.[3]

20.     The Defendants, or one or more of them, manage, own and/or operate the terminals from which they have blacklisted TPH. The Complaint will refer to those entities that manage, own and/or operate the terminals from which the defendants blacklisted TPH effective July 1, 2016, collectively, jointly and severally as "Kinder Morgan."

### Statement of Facts

### T. Parker Host, Inc.

21.     TPH is a shipping agency, serving vessels at several marine terminals, primarily on the East and Gulf Coasts of the United States. A shipping agency or shipping agent is the

---

[1] Because TPH is unable at this time to establish which entities actually own and/or operate the marine terminals at issue, TPH reserves the right to amend or move for leave to amend this Complaint to reflect the appropriate corporate defendants behind Kinder Morgan's actions.

[2] *See* supra, note 1.

[3] *See* supra, note 1.

designated person or agency held responsible for coordinating and/or handling shipments and cargo, and the general interests of its customers, at ports and harbors, on behalf of ship owners, managers, and charterers. Every port call requires a nominated agent responsible for the operational and financial coordination between the vessel itself, the owner/operator of the vessel, and the port or terminal.

22.    Acting as the local representative of the principal, the agent provides local knowledge and expertise and ensures that the principal's requirements are performed with the utmost efficiency and dispatch.[4] The ship agent, as enshrined by international maritime convention, is primarily the servant of the master and owners of the vessel, the "principal."

23.    In addition to serving as a ship's agent, TPH serves as protective agents, supervises the charterer's agent and monitors all aspects of port call operations including hold cleaning, loading and unloading cargo, positioning, documentation review, and delivery time verification. TPH is a family-owned business that has operated in Hampton Roads for over 90 years and garnered long-term business relationships.

24.    TPH handles over 3,600 vessels per year. TPH is a dry bulk agent and also works extensively with tankers carrying liquid cargo. TPH is a certified member of the Association of Ship Brokers & Agents and longstanding member of the Baltic and International Maritime Council (the world's largest international shipping association).[5] In November 2015, TPH was named International Bulk Ships Agent of the Year by the International Bulk Journal.

---

[4] *See The Role, Responsibilities and Obligations of the Ship Agent in the International transport Chain*, Federation of National Associations of Ship Brokers & Agents (FONASBA), *available at* https://www.fonasba.com/wp-content/uploads/2012/10/Role-of-Agent-Final1.pdf.

[5] *See The Role of the Ship Agent*, ASBA, *available at* http://www.asba.org/wp-content/uploads/2014/03/dci-feb14-asba-certified-agents.pdf.

25.    TPH also provides vessel attendance, customs clearance, cargo documentation, and husbandry services.

26.    TPH generally receives appointments to act as vessel agent on a continuing basis for various vessels and vessel operators. The contracts entered into by TPH with vessels are part of a larger working relationship and business expectancy that TPH has with the vessels and shippers. TPH has established relationships with its customers that extend back many years. Those customers then use TPH as their agent for each call to local terminals, including those owned and/or operated by Kinder Morgan.

27.    To perform its work as agent, it is essential for TPH to access its clients' vessels when docked at marine terminals. Historically, TPH has been always been allowed access to the Kinder Morgan owned or operated terminals and has been allowed to receive information from Kinder Morgan concerning the ships TPH will act as agents for, including but not limited to, expected arrival dates, etc.

### Kinder Morgan

28.    The larger Kinder Morgan corporate family is the largest energy infrastructure company in North America. Kinder Morgan formed as a result of Richard Kinder's severance package from Enron and his acquisition of the Enron division that eventually became Kinder Morgan – Enron Liquid Pipelines LLP. Kinder Morgan now owns an interest in and/or operates approximately 84,000 miles of pipelines, as well as numerous marine terminals.

29.    Kinder Morgan possesses a dominant position in the marine terminal operation and management market. According to its website: *"Kinder Morgan is the largest independent terminal operator in North America, providing a strong, reliable network of approximately 180*

8

*terminals serving our customers' storage, distribution, blending and logistical needs.*" Kinder Morgan, http://www.kindermorgan.com/business/terminals (last visited July 1, 2016).

30.     Relevant here, Kinder Morgan owns and/or operates thirty-seven marine terminals serviced by TPH, including Pier IX in Newport News, as well as Kinder Morgan's Norfolk Terminal, Elizabeth River Terminal in Chesapeake, and South Hill Terminal in Chesapeake. Of these thirty-seven terminals, Kinder Morgan owns an interest in twenty-six terminals. Kinder Morgan operates, on behalf of marine terminal owners, an additional eleven terminals serviced by TPH throughout the East and Gulf Coasts.

31.     Kinder Morgan has never lodged any complaints about TPH's service as a vessel agent at the terminals Kinder Morgan owns or operates.

### Host Terminals, Inc.

32.     TPH's affiliated entity, Host Terminals, Inc., provides marine terminal operations and stevedoring, much like Kinder Morgan. Host Terminals, Inc. currently operates and manages stevedoring services at fourteen U.S. East and Gulf Coast locations, handling dry bulk, breakbulk, heavy lift and project cargoes, and container moves. TPH owns 75% of the outstanding shares of stock in Host Terminals, Inc.

33.     Host Terminals, Inc.'s participation in the operation of marine terminals remains relatively modest in the marketplace, particularly in comparison to Kinder Morgan's terminal operations.

### Kinder Morgan's Predatory Conduct

34.     Over the last 15 years, TPH has properly performed its ship agency business through Kinder Morgan's terminal networks without any complaint from Kinder Morgan. TPH

has always complied with all safety, insurance, and operational requirements for Kinder Morgan facilities.

35.    Since 2012, ten former employees of Kinder Morgan have come to work for TPH. These employees range from electricians to TPH's chief commercial officer, who joined TPH in 2012. Of the ten employees, four were laid off by Kinder Morgan, and one quit, before approaching TPH for employment. Five were recruited by TPH. Upon information and belief, all relevant employees were employees "at will" and not subject to non-competition agreements.

36.    On or about April 29, 2016, TPH began to hear rumors that Kinder Morgan planned to blacklist TPH from entering the marine terminals owned and/or operated by Kinder Morgan, the result of which would be to deny TPH access to its clients' vessels and thus prevent TPH from conducting its business.

37.    On May 3, 2016, Host Terminals, Inc. learned that it was the successful bidder for the terminal operating contract for the Sparrows Point Terminal in Baltimore, Maryland, which had previously been managed by Kinder Morgan.

38.    The next day, May 4, 2016, Kinder Morgan began distributing the letter attached as **Exhibit 1** to TPH's customers, TPH's competitors, as well as TPH's various regional offices ("the Blacklist Notice").

39.    By the Blacklist Notice, Kinder Morgan announced a new "policy regarding vessels that call on any Kinder Morgan Terminal and require use of vessel agents." The Blacklist Notice requires Kinder Morgan to approve all vessel agents, port agents, protective agents, and subagents before an agent can coordinate a port call or obtain access to vessels, effective July 1, 2016. The Blacklist Notice states that "[a]ny attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan facility or dock, ceasing cargo

10

operations, or requiring the vessel to immediately vacate the berth . . . ." Kinder Morgan "reserves the right and sole discretion to reject or approve any Agent."

40.      In addition, the Blacklist Notice provides that "approved Agents shall NOT act as a subagent for a non-approved agent." Accordingly, Kinder Morgan extended its threat to agents who it placed on the Approved Agents List, to ensure that TPH cannot even indirectly do work through an approved sub-agent, including serving as a ship's agent for its customers while not going on a Kinder Morgan owned or operated marine terminal facility.

41.      By its terms, the Blacklist Notice applies to any terminal owned or operated by Kinder Morgan, which would include those terminals that Kinder Morgan leases from government entities, as well as private owners.

42.      The Blacklist Notice states: "Kinder Morgan must approve of any vessel agent, port agent, protective agent or subagent ("Agent"), **whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party**, that conducts the following activities: **1) Coordinates** the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; **or 2) Obtains access to the vessel** while the vessel is moored to a Kinder Morgan owned or operated facility or dock." Ex. 1. (emphasis added).

43.      Kinder Morgan thus claims the right to veto the contracts and arrangements between shippers and their agents. Kinder Morgan asserts that *Kinder Morgan*, by its own fiat, must "approve" of the agents *appointed by other entities whose vessels and port calls are actually being handled by agents* like TPH. By the terms of the Blacklist Notice, Kinder Morgan has asserted a unilateral ban on, not only TPH's ability to physically access vessels moored at Kinder Morgan marine terminals, but also on *coordinating* the port call. Coordinating a port call

11

involves almost no activity on Kinder Morgan owned and/or operated property. Rather, it is the logistical work of scheduling, phone calls, emails, and the like to ensure that tugboats, harbor pilots, railroads, barges, and all of the other necessary services are available, timely, and as contracted.

44.     Importantly, the right to appoint a vessel or port agent is most often included in the terms of the contract between the buyer and seller of the cargo. The party to that contract who pays for the ocean freight of its cargo is the charterer. Charterers are TPH's primary customers. By issuing the Blacklist Notice, Kinder Morgan aims to not only destroy TPH, but to control which agents "the cargo owner, shipper, receiver, charterer, vessel owner, or other party" can appoint to service their vessels. Kinder Morgan's Blacklist Notice threatens to enforce its sprawling boycott of TPH with threats and intimidation: "Any attempt of circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent." *See* Ex. 1.

45.     Accompanying the Blacklist Notice was a list of 63 "Approved Agents" ("the Approved Agents List"). *See* Ex. 1. TPH was not on the Approved Agents List.

46.     Upon information and belief, there was no vetting process or criteria for inclusion on the list. Kinder Morgan has never complained about TPH's service. TPH has consistently maintained an excellent safety track record.

47.     Kinder Morgan maliciously, intentionally, purposefully, and without lawful justification, wrongfully excluded TPH from the Approved Agents List, in order to blacklist TPH from serving its clients at Kinder Morgan terminals and thereby punish TPH for Host Terminal

12

Inc.'s competition with Kinder Morgan. TPH believes that Kinder Morgan implemented the Blacklist Notice as retaliation for Host Terminals, Inc.'s competition for the Sparrows Point contract in Baltimore, and competition with Kinder Morgan generally. The Blacklist Notice's terms were only disingenuous pretext for excluding TPH.

48.     Indeed, Kinder Morgan has admitted, subsequent to the issuance of the Blacklist Notice, that its blacklisting of TPH was a result of Host Terminal, Inc.'s competing with Kinder Morgan in the terminal management market and TPH's hiring of former employees of Kinder Morgan. Upon information and belief, TPH is the only vessel agent conducting a significant volume of business at Kinder Morgan terminals who Kinder Morgan blacklisted.

49.     Kinder Morgan's sole aim with the Blacklist Notice was to punish TPH, injure its business and to have TPH stop Host Terminals, Inc. from competing with Kinder Morgan in the marine terminal business. Kinder Morgan's references to safety and insurance in the Blacklist Notice are only fabricated pretext for its actions.

50.     If TPH is denied access to terminals owned and/or operated by Kinder Morgan, TPH will not be able to provide services to its customers' ships docked at all thirty-seven Kinder Morgan terminals, and will be unable to perform under its existing contracts and appointments for its customers and to obtain future contacts and appointments from its customers and potential customers. As a result, TPH will suffer a tremendous and irreversible loss of customers, business and long-earned reputation and good will. From January 2013 through May 2016, TPH has earned almost $7,500,000 in fees from serving vessels at Kinder Morgan owned and/or operated terminals. TPH stands to lose an average of roughly $2,200,000 in revenue, and corresponding profits, annually as a result of the illegal Blacklist Notice.

51.     Typically, once customers start using an agent, they rarely switch. Kinder Morgan knows this. That is why Kinder Morgan is blacklisting TPH to pound TPH into submission in an effort to have its affiliated entity, Host Terminals, Inc., cease competing with Kinder Morgan in its marine terminal business. Indeed, almost immediately after TPH's competitors learned of the Blacklist Notice, they directly contacted TPH's customers to solicit business.

52.     Following Kinder Morgan's announcement and distribution of the Blacklist Notice, TPH inquired of Kinder Morgan why it was excluded from the Approved Agents List.

53.     First, local TPH employees contacted the terminal managers for the Kinder Morgan terminals at which they regularly work. The terminal managers stated that the Blacklist Notice came straight from Kinder Morgan corporate; that they had learned of it just before TPH did; they too were surprised that TPH was excluded from the Approved Agents List; and referred questions to Hans Luetkemeier, Kinder Morgan's Director of National Accounts – Dry Bulk, who was Kinder Morgan's highest ranking official identified on the various versions of the Blacklist Notice.

54.     After many attempts to contact Mr. Luetkemeier, he eventually called TPH's Bobby Scott on May 16, 2016, but refused to provide any details on why TPH was excluded from the Approved Agents List. He did state that, as far as he knew, TPH had not violated any of Kinder Morgan's safety policies. Mr. Luetkemeier only referenced a goal to include companies on the Approved Agents List with whom Kinder Morgan can "create synergies" – a reference to the fact that Host Terminals, Inc. competes with Kinder Morgan in some areas and, in particular, with regard to a contract for port management in Baltimore, Maryland that had long been held by Kinder Morgan. Luetkemeier said that TPH could email him a formal request to be included on

14

the Approved Agents List. Immediately after the call, TPH emailed a formal request to be placed on the Approved Agents List. Luetkemeier never replied to that email

55.     On May 12, 2016, Kinder Morgan's President of Terminals, John Schlosser called TPH's Chief Commercial Officer, Cees Van de Mortel. Schlosser stated that he called to personally inform TPH that he was not going to approve TPH's request to be included on the Approved Agents List. When asked why not, Schlosser stated that TPH obtains too much terminal information as an agent and does not "firewall" between TPH and Host Terminals, Inc.

56.     Kinder Morgan has not even suggested or pretended that TPH has violated or was not acting in accordance with some unidentified Kinder Morgan safety or insurance requirements.

57.     Kinder Morgan has insisted on fully enforcing the Blacklist Notice, beginning on July 1, 2016. In addition, Kinder Morgan has already taken steps to ban TPH and implement the Blacklist Notice. Attached as **Exhibit 2** is a photograph taken June 10, 2016 at Kinder Morgan's terminal in Beaumont, Texas. It states "T. PARKER HOST, INC. IS NOT ALLOWED ON Kinder Morgan Property. If they show up refer them to call Hans Luetkemeier at (504) – 620-4628 Effective 5-19-2016." Confirming that the Blacklist Notice is a blatant, specific attack on TPH and not a good faith policy, this official Kinder Morgan notice singles out TPH and fails to even mention any of the other agents allegedly excluded from the Approved Agents List.

58.     In a further attempt to resolve the matter, TPH met with Kinder Morgan representatives at its headquarters in Houston, Texas on June 3, 2016. During that meeting, President of Terminals for Kinder Morgan, John Schlosser, and Kinder Morgan Chief Commercial Officer, Randall Maffett, made it crystal clear why TPH was blacklisted – competition from Host Terminals, Inc.'s terminal business. Alluding to Host Terminals, Inc.'s

competition with Kinder Morgan, Kinder Morgan said that TPH had "pissed in its house" and now had to "pay for it." Comparing itself to other large, powerful energy companies, Kinder Morgan officials stated "you pissed on Exxon Mobil" and have to pay for it. They further stated that they would not change their decision, but if TPH changes its "behavior," they might reconsider their decision at some unspecified point in the future, but not now.

59.    Kinder Morgan's actions are malicious in that they are intentional, purposeful, and without lawful justification, and are plainly anti-competitive, illegal, tortious, threatening, intimidating, in violation of the standard practices of the industry, unfair, unreasonable, and overreaching.

60.    Notwithstanding the Blacklist Notice, TPH customers want to continue to do business with TPH. However, to ensure they have ship's agents after July 1, 2016, TPH's customers have advised that they will have to make, and many already have made, arrangements to use other agents starting July 1, 2016.

## COUNT I
## PRELIMINARY INJUNCTIVE RELIEF
## PURSUANT TO 46 U.S.C. § 41306

61.    TPH incorporates the allegations set forth in paragraphs 1-60 of this Complaint, as if set forth fully herein.

62.    On June 21, 2016, TPH filed a complaint with the Federal Maritime Commission ("FMC"). On June 29, 2016, TPH received Notice of Filing of Complaint and Assignment ("Notice") from the FMC that Kinder Morgan was served a copy of the complaint. The matter has been assigned Docket No. 16-14. A copy of the Notice and Complaint are attached as **Exhibit 3**.

16

63.    Before the FMC, TPH has alleged that Kinder Morgan violated and will violate 46 U.S.C. § 41106. *See* Ex. 3. By separate motion filed herewith, TPH seeks preliminary injunctive relief, pursuant to 46 U.S.C. § 41306 and Rule 65 of the Federal Rules of Civil Procedure.

64.    46 U.S.C. § 41306 provides in relevant part: "After filing a complaint with the Federal Maritime Commission under section 41301 of this title, the complainant may bring a civil action in a district court of the United States to enjoin conduct in violation of this part." § 41306(a).

65.    Pursuant to 46 U.S.C. § 41306, the Court should enter an order enjoining Kinder Morgan's enforcement of the Blacklist Notice and Approved Agents List until not less than ten (10) days after the FMC has issued a final ruling on TPH's Complaint. The Court should further declare that TPH cannot, during the pendency of the FMC proceeding, violate the Shipping Act or otherwise prevent TPH from conducting its business in the same normal and ordinary manner as it did before Kinder Morgan issued the Blacklist Notice. The Court should further require Kinder Morgan to notify, in writing, every person or entity to which it distributed the Blacklist Notice and inform them that it is rescinded, void and of no force or effect.

**COUNT II**
**TORTIOUS INTERFERENCE**
**WITH EXISTING CONTRACTS NOT TERMINABLE AT WILL**

66.    TPH incorporates the allegations set forth in paragraphs 1-65 of this Complaint, as if set forth fully herein.

67.    TPH has entered into contracts of definite duration to render vessel agency services, and not terminable at will, with CSL Americas and Alpha Coal Sales Co., LLC. A copy of the contracts is attached as **Exhibit 4**.

17

68.    TPH's customers, including CSL Americas and Alpha Coal Sales Co., LLC, use terminals owned and/or operated by Kinder Morgan.

69.    Kinder Morgan knew of TPH's contracts and ongoing relationships with its customers who utilize Kinder Morgan terminals, based in part on TPH's historical presence in the vessel agency industry, as well as by virtue of TPH's presence at Kinder Morgan owned and/or operated terminals. Accordingly, at all relevant times, Kinder Morgan had knowledge of TPH's contracts for agency services.

70.    Kinder Morgan knowingly, intentionally, purposefully, and without legal justification, implemented the Blacklist Notice, and knowingly and intentionally excluded TPH from the Approved Agents List. Kinder Morgan intended to interfere with TPH's contracts and business relationships, including the contracts attached as **Exhibit 4**, as part of its broader goal to curtail competition in the marine terminal operation market and stop Host Terminals, Inc. from competing in the marine terminal business. The Blacklist Notice contains no substantive analysis of vetting agents. Rather, it is a raw tactic of intimidation and retaliation employed by Kinder Morgan to destroy TPH's business that goes against the established practice in the trade and industry. It is also patently anti-competitive and unlawful. The Blacklist Notice was an improper and tortious method of interfering with TPH's contracts.

71.    Under the agreement with Alpha Coal Sales Co., LLC., TPH promised to, among other things, "remain properly staffed in Baltimore and Norfolk with full time and part time experienced people to supervise the loading of Alpha vessels from the commencement to the finish of the loading." Ex. 3. Alpha Coal Sales Co., LLC utilizes the Kinder Morgan Norfolk terminal.

72.     Under the agreement with CSL Americas, TPH is the "preferred agent in Baltimore, Norfolk and all Gulf ports," including ports owned and/or operated by Kinder Morgan, such as Kinder Morgan Norfolk.

73.     Because TPH's customers, including CSL Americas and Alpha Coal Sales Co., LLC, utilize Kinder Morgan terminals and because TPH must have access to Kinder Morgan terminals to perform under its contracts with its customers, Kinder Morgan's intentional act of prohibiting TPH from coordinating port calls and accessing vessels at Kinder Morgan terminals will cause TPH and TPH's customers to breach their contracts and otherwise destroy TPH's ability to maintain its business relationships with its customers. TPH's customers will be, and have already been prevented from using TPH's services, thus breaching their contracts.

74.     As a proximate cause of the imminent enforcement of the Blacklist Notice, TPH will be damaged by forever losing customers, thus causing TPH irreparable harm. As a result of Kinder Morgan's interference, TPH will not be able to perform the services it has contracted to perform.

75.     There is an actual controversy between Kinder Morgan and TPH. If Kinder Morgan is allowed to implement the Blacklist Notice on July 1, 2016, TPH will be barred from entering Kinder Morgan terminals and providing its services. As a result, TPH will be in breach of its contracts. TPH will irreparably lose numerous customers as a direct result of Kinder Morgan's heavy-handed policy.

76.     Accordingly, pursuant to 28 U.S.C. § 2201, the Court should enter an order declaring that the Blacklist Notice constitutes tortious interference with TPH's existing contracts in violation of the common law of Virginia and is void and of no effect, and further declaring that TPH may continue to provide vessel agency services at Kinder Morgan terminals. The Court

19

should further require Kinder Morgan to notify, in writing, every person or entity to which it distributed the Blacklist Notice to inform them that it is rescinded, void and of no force or effect.

77.     In the alternative, TPH has been damaged as a result of Kinder Morgan's announcement of the Blacklist Notice and seeks actual and punitive damages for the same.

78.     At all relevant times, Kinder Morgan's actions have been willful, wanton, malicious and with a conscious disregard of TPH's and TPH's customer's rights.

79.     In equity, TPH is entitled to its reasonable attorneys' fees, litigation expenses, and costs.

## COUNT III
## TORTIOUS INTERFERENCE
## WITH EXISTING CONTRACTS TERMINABLE AT WILL, PROSPECTIVE CONTRACTS, BUSINESS EXPECTANCIES, AND ECONOMIC ADVANTAGES

80.     TPH incorporates the allegations set forth in paragraphs 1-79 of this Complaint, as if set forth fully herein.

81.     At all times relevant to this action, TPH maintained valid contracts and ongoing business relationships with numerous shippers, vessels, and vessel operators, including but not limited to: Agronova, Alexander & Blake, Alpha Coal Sales Co., LLC, AMCI, American Borate, Ameropa, Barton Freight Services Co. Ltd., Barton International, Bulk Trading SA, Cemex, Chemship, Clipper Bulk A/S, CSC Sugar Refining Services, LLC, d'Amico, E. CL S.A., E.ON/Uniper, EDF Trading Limited, Elkem, Endesa, ENEL, Garcia Munte (Suek), The Gavilon Group, LLC, Gerdau, Glencore, Grieg Star, HC Trading, Helm Shipping LLP, Honeywell, Javelin Logistics, K+S AG, Kerneos, Inc., Klaveness, Koch Nitrogen International Sarl, Lafarge-Holcim, Morton, Noble Chartering, Norden, Odfjell Tankers AS, Oxbow, Pacific Basin, Rio Tinto, RWE, SCB, Spliethoff, The Andersons, Inc., Thorco, ThyssenKrupp, Total, Trammo,

Tricon Energy, U.S. Steel, UKT, United Coal, Vulcan, Weco Bulk, Navesco S.A., CSL Americas, Ameropa, Trammo, Inc., Vitol, Mazza Iron and Steel, American Borate, International Materials, Inc., Xcoal Energy Resources, XO Shipping, and Agriculture and Energy Carriers, Ltd.

82.    By the nature of the vessel agency industry, there are few long-term agreements for agency services. Rather, TPH relies on its goodwill and ongoing business relationships to secure future, ad hoc contracts to provide services to its customers.

83.    TPH has garnered goodwill with its customers based on its provision of excellent and experienced agency services and its history in the industry. As a result of its customer relationships and goodwill, TPH has a portfolio of customers who regularly and consistently insist on using TPH as their agent. This takes many forms, including, but not limited to: written contracts, prospective contracts, handshake agreements, oral contracts, customary appointments and practices, long histories of dealing, and other business expectancies.

84.    Kinder Morgan aims to interfere with the entirety of TPH's business relationships and expectancies through the Blacklist Notice.

### Contracts Terminable at Will

85.    For example, attached as **Exhibit 5** is a copy of TPH's terminable at will contract with Koch Nitrogen International Sarl for port agency services. Under the contract, TPH agreed to "undertake all necessary, appropriate or customary port agency services in connection with designated [Koch] chartered vessels and shall use its best endeavors to protect [Koch]'s rights and interests." Ex. 5. TPH also warranted that "that it has all applicable regulatory, governmental and other consents, licenses and authorizations."

86.    At all relevant times, Kinder Morgan had knowledge of TPH's contracts for agency services, including the contract attached as **Exhibit 5**.

87.    Because TPH's customers, including Koch Nitrogen International Sarl, utilize Kinder Morgan terminals and because TPH must have access to Kinder Morgan terminals to perform under its contracts with its customers, Kinder Morgan's intentional act of prohibiting TPH from coordinating port calls and accessing vessels at Kinder Morgan terminals will cause TPH and TPH's customers to breach their contracts and otherwise destroy TPH's ability to maintain its business relationships with its customers. TPH's customers will be, and already have been prevented from using TPH's services, thus breaching their contracts.

88.    Kinder Morgan intentionally interfered with TPH's contracts, including, but not limited to, its contract with Koch Nitrogen International Sarl.

### Prospective Contracts

89.    Prior to Kinder Morgan's announcement of the Blacklist Notice, TPH had a business expectancy to enter into numerous contracts with ship owners and charterers who call on Kinder Morgan terminals.

90.    At all relevant times, Kinder Morgan had knowledge of TPH's prospective contracts for agency services based on TPH's long history in the industry.

91.    Because TPH's customers utilize Kinder Morgan terminals and because TPH must have access to Kinder Morgan terminals to perform under its prospective contracts with its customers, Kinder Morgan's intentional act of prohibiting TPH from coordinating port calls and accessing vessels at Kinder Morgan terminals will cause TPH to lose its prospective contracts and otherwise destroy TPH's ability to maintain its business relationships with its customers.

22

TPH's customers will, and already have been prevented from using TPH's services, thus destroying TPH's interest in prospective contracts.

## Business Expectancies and Economic Advantages

92.    TPH had a business expectancy in serving as the vessel agent for its numerous customers that call on Kinder Morgan terminals.

93.    TPH's business relationships include the expectancy that those charterers, shippers and vessel owners will appoint TPH as their agent in the future for their port calls.

94.    Kinder Morgan knew of both the nature of TPH's business relationships and the specific relationships based on TPH's long history and practice in the industry.

95.    But for Kinder Morgan's intentional misconduct and tortious actions taken through the Blacklist Notice, TPH would have realized the business expectancies that it had with the above-identified shippers and vessel owners.

96.    For example, in early June 2016, one of TPH's customers, International Materials, Inc., had an upcoming import clinker ship into Sparrow's Point in Baltimore, currently managed by Kinder Morgan. After receiving the Blacklist Notice, Mike Beck of International Materials, Inc. appointed another agent, John S. Connor, instead of its usual and preferred agent, TPH, out of fear of retaliation from Kinder Morgan.

97.    Another of TPH's customers, Xcoal Energy Resources, informed TPH that the Blacklist Notice has resulted in an embarrassing situation for Xcoal because TPH, the agent that they recommend, insist upon, and exclusively use, is being banned from attending vessels at Kinder Morgan's terminals, especially those here in Hampton Roads, including Pier IX in Newport News.

23

98.    Several customers of TPH have called and emailed TPH seeking explanation of the Blacklist Notice, Kinder Morgan's exclusion of TPH from the Approved Agents List, and updates on whether TPH will be able to continue serving as their agent after July 1, 2016.

99.    On May 24, 2016, Levent Ulgen, with Kinay Chartering, which operates the vessels that carry Turkish minerals to Norfolk for TPH's customer, American Borate, called TPH and informed it that its competitor, Capes Shipping, was visiting him in Istanbul on June 2, 2016. Levent stated that he does not want to work with anyone else besides TPH, but will be forced to do so if TPH cannot get on the Approved Agents List by July 1, 2016.

100.    On June 24, 2016, Kinay Chartering informed TPH that it had hired TPH's competitor, Capes Shipping, to serve as agent for its July 12, 2016 port call at Kinder Morgan's Norfolk Terminal as a direct result of the Blacklist Notice.

101.    On May 23, 2016, Tom Mazza of Mazza Iron and Steel emailed TPH, stating "as of July 1- KM has requested we utilize the agents pre-approved list, I don't see your company on the list so we will have [to] utilize anther agent for KM terminal."

102.    On May 18, 2016, another customer of TPH, Barton International, noted that it has been very pleased with TPH's work and considers TPH a business partner. Although unhappy with Kinder Morgan's actions, Barton International stated that it would consider other options besides Kinder Morgan, but due to its supply chain, the options are limited. Within hours of receiving the Kinder Morgan letter, Barton International received very aggressive solicitations from TPH's agency competition in Norfolk.

103.    Also on May 18, 2016, Kerneos, Inc.'s Plant Manager emailed TPH, stating "We like working with you guys and you have done a good job for us in the last few years. I said as much in an email to Pat/Gary - that we would prefer not to change agents because of our Kerneos

specifics and awareness of clinker cross contamination issues, getting samples ahead of time etc..... etc..... BUT - our hands are kind of tied - we are not in a position to threaten them, or coerce them, and we do need to bring ships in for unloading. We are really looking to you to see if you can break the deadlock somehow."

104.    Just after Kinder Morgan sent out the Blacklist Notice, Jim Sparks of American Borate emailed TPH on May 5, 2016 and stated: "We have already been contacted by a number of shipping agents about our business based on the Kinder Morgan decision. Just want to stay out of the fray for now. We have enjoyed a long relationship, one which we value and hopefully all of [us] can get through this."

105.    Kinder Morgan's issuance and implementation of the Blacklist Notice was intentional, purposeful, and without lawful justification, and was wrongfully intended to be, and is, an act of intentional and bad faith interference with the contracts and business expectancies of TPH and is aimed at terminating TPH's business relationship with all of the above customers who call on Kinder Morgan terminals, and an effort to drive TPH out of business as punishment for Host Terminals, Inc.'s competition with Kinder Morgan.

106.    Several customers have expressed support for TPH and insisted on their desire to use TPH as their agent. Notwithstanding, the same customers acknowledged the economic realities of having to make alternate plans, contracts, and appointments for agents, if TPH is prohibited from serving as an agent at Kinder Morgan terminals

107.    As of the filing of this Complaint, TPH has already lost several appointments and contracts for July 2016. Because of the Blacklist Notice, shippers have been forced to hire other vessel agents to serve their vessels instead of TPH. For example, Bulk Trading has appointed

25

other agents. Grieg Star, a longtime TPH customer, appointed new agents for Kinder Morgan's Fernandina Beach terminal on June 7, 2016.

108.    Based on TPH's business relationship with AMCI Group, another customer, TPH has learned that AMCI Group is planning to expand cargo exports at Pier IX in Newport News and prefers to use TPH as its vessel agent. However, because Pier IX is a Kinder Morgan facility, TPH will lose the business opportunity to serve AMCI for future vessels.

### Kinder Morgan's Interference by Improper Methods

109.    Kinder Morgan intentionally interfered with TPH's contracts, prospective contracts, and business expectancies causing the breach and/or termination of TPH's relationships and expectancies.

110.    But for Kinder Morgan's Blacklist Notice and other actions of intentional interference, including its creation of the arbitrary Approved Agents List, TPH would have continued in all of its business relationships and realized its expectancies, including, but not limited to the above-listed customers.

111.    Kinder Morgan used improper means and methods to interfere with TPH's contracts, prospective contracts, and business expectancies. Because the Blacklist Notice violates the Shipping Act, 46 U.S.C. § 41106, it is an improper means to interfere with TPH's contracts.

112.    Kinder Morgan owns and/or operates numerous bulk and liquids marine terminals along the East and Gulf Coasts. Kinder Morgan is engaged in the United States in the business of providing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier. Thus, Kinder Morgan is a marine terminal operator.

113.    Under the Shipping Act, marine terminal operators "may not . . . unreasonably discriminate in the provision of terminal services to, a common carrier or ocean tramp; give any

undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any person; or unreasonably refuse to deal or negotiate." 46 U.S.C. § 41106.

114. By imposing the Blacklist Notice, Kinder Morgan has unreasonably discriminated in the provision of terminal services, intentionally imposed an undue and unreasonable prejudice and disadvantage on TPH, and unreasonably refused to deal or negotiate with TPH. TPH will no longer be able to perform under its vessel agency appointments or generally conduct its business as a direct result of Kinder Morgan's exclusionary policy.

115. TPH and the entities on the Approved Agents List are similarly situated as competitors in the market of vessel agency. By intentionally excluding TPH from the Approved Agents List, Kinder Morgan accorded TPH and the entities on the Approved Agents List different treatment, not justified by differences in transportation factors.

116. Because the Blacklist Notice, the Approved Agents List, and Kinder Morgan's related actions violate the Shipping Act, they are improper methods of interference with TPH's contracts, prospective contracts, and business expectancies.

117. The Blacklist Notice, the Approved Agents List, and Kinder Morgan's related actions also constitute improper methods of interference because they are threats, an intimidation tactic, misrepresentative of TPH's quality of service, defamatory, sharp dealing, overreaching, and plainly anti-competitive. Kinder Morgan is using its dominant position in the marine terminal management and operation market to maliciously exclude the vessel-agent affiliate of a bona fide competitor. Indeed, Kinder Morgan has admitted it implemented the Blacklist Notice and Approved Agents List because Host Terminals, Inc. did not offer to partner, make a deal, or

"create synergies" with Kinder Morgan. Per Kinder Morgan, TPH "must pay for" Host Terminals efforts to compete with Kinder Morgan in the free market.

118.   Kinder Morgan's intentional exclusion of TPH has resulted in imminent injury to TPH by preventing it from performing under its agency appointments and contracts.

119.   As a proximate cause of the imminent enforcement of the Blacklist Notice, TPH will be damaged by forever losing customers, thus causing TPH irreparable harm. As a result of Kinder Morgan's interference, TPH will not be able to perform the services it has contracted to perform, realize its prospective contracts, or realize its business expectancies for future appointments.

120.   There is an actual controversy between Kinder Morgan and TPH. If Kinder Morgan is allowed to implement the Blacklist Notice on July 1, 2016, TPH will be barred from entering Kinder Morgan terminals and providing its services. As a result, TPH will be in breach of its contracts, lose its prospective contracts, and lose its ongoing business expectancies with customers. TPH will irreparably lose numerous customers as a direct result of Kinder Morgan's interference.

121.   That is, as a result of Kinder Morgan's improper interference, TPH will lose all of its customers who call on Kinder Morgan owned and/or operated terminals, which over the last three years has generated approximately $2,200,000 per year in revenues, and corresponding profits, for TPH.

122.   Accordingly, pursuant to 28 U.S.C. § 2201, the Court should enter an order declaring that the Blacklist Notice constitutes tortious interference with TPH's contracts terminable at will, its prospective contracts, and its business expectancies, in violation of the common law of Virginia and is void and of no effect, and further declaring that TPH may

continue to provide vessel agency services at Kinder Morgan terminals. The Court should further require Kinder Morgan to notify, in writing, every person or entity to which it distributed the Blacklist Notice to inform them that it is rescinded, void and of no force or effect.

123.   In the alternative, TPH has been damaged as a result of Kinder Morgan's announcement of the Blacklist Notice and seeks actual and punitive damages for the same. TPH has lost several appointments that, but for the Blacklist Notice, would have occurred in July 2016.

124.   At all relevant times, Kinder Morgan's actions have been willful, wanton, malicious and with a conscious disregard of TPH's rights and TPH's customer's rights.

125.   In equity, TPH is entitled to its reasonable attorneys' fees, litigation expenses, and costs.

## COUNT IV
## VIOLATION OF VIRGINIA CODE §§ 18.2-499 AND 500

126.   TPH incorporates the allegations set forth in paragraphs 1-125 of this Complaint, as if set forth fully herein.

127.   By issuing the Blacklist Notice and taking the other actions set forth herein, Kinder Morgan has maliciously, intentionally, purposefully, and without lawful justification, attempted to procure and has, in fact, procured the participation, cooperation, agreement or other assistance of any one or more persons, including the vessel agents listed on the Approved Agents List and TPH's customers, by threat and intimidation, to enter into a combination, association, agreement, mutual understanding or concert designed and intended to injure TPH in its reputation, trade and business.

128.    In addition, Kinder Morgan has maliciously, intentionally, purposefully, and without lawful justification, attempted to procure and has, in fact, procured the participation, cooperation, agreement or other assistance of other agents from serving as sub-agents for TPH. That is, Kinder Morgan has sought the cooperation, assistance or mutual understanding, by intimidation, threat and otherwise, of other agents to agree to not hire TPH as a sub-agent for vessels at Kinder Morgan terminals. In addition, the Blacklist Notice bars agents on the Approved Agents List from serving as subagents for TPH for vessels calling on marine terminals owned or operated by Kinder Morgan. Through the Blacklist Notice, Kinder Morgan has attempted to combine with other agents to boycott TPH altogether and prevent it from conducting business at terminals owned or operated by Kinder Morgan terminals and even outside of Kinder Morgan terminals as a subagent for agents on the Approved Agents List.

129.    The issuance and implementation of the Blacklist Notice so as to bar TPH from conducting business, either directly or indirectly, at marine terminals owned or operated by Kinder Morgan violates the Shipping Act, 46 U.S.C. § 41106, and constitutes intentional unlawful acts undertaken for the purpose of injuring the reputation, trade and/or business of TPH.

130.    The issuance and implementation of the Blacklist Notice so as to bar TPH from conducting business, either directly or indirectly, at marine terminals owned or operated by Kinder Morgan, constitutes intentional and tortious interference with TPH's existing contracts and business expectancies, and constitutes intentional unlawful acts undertaken for the purpose of injuring the reputation, trade and/or business of TPH.

131.    The above-described actions of Kinder Morgan violate Virginia Code § 18.2-499(A) and (B).

30

132.    As a direct and proximate result of Kinder Morgan's intentional, purposeful, legally unjustified, tortious, and unlawful actions as set forth herein, TPH has been damaged in its reputation, trade and/or business and, if these actions are allowed to continue, TPH's business will be destroyed.

133.    Pursuant to Virginia Code § 18.2-500, TPH is entitled to its reasonable attorneys' fees, litigation expenses, and costs.

WHEREFORE, Plaintiff T. Parker Host, Inc. prays that the Court grant judgment against the Defendants, jointly and severally, in the amount of at least $13,000,000, in compensatory damages, treble damages, plus interest, costs and attorneys' fees, under Count IV; compensatory damages, plus punitive damages, plus interest, costs and attorneys' fees under Counts II and III; and enter an Order: (i) declaring that the Blacklist Notice, the Approved Agents List, and/or Kinder Morgan's actions related thereto, violate the Shipping Act; (ii) declaring that the Blacklist Notice, the Approved Agents List, and/or Kinder Morgan's actions related thereto constitute tortious interference with the contracts and/or business expectancies of TPH in violation of law; (iii) declaring that the Blacklist Notice and the Approved Agents List are void and of no effect; (iv) enjoining Kinder Morgan, both preliminarily and permanently, from excluding TPH from accessing terminals owned and/or operated by Kinder Morgan, including an order requiring Kinder Morgan to cooperate with TPH to provide the information TPH needs to act as a ship's agent and in the other capacities described in paragraphs 22, 23, 25 and 27 at marine terminals owned or operated by Kinder Morgan; (v) declaring that TPH shall be allowed to continue serving as an agent at terminals owned and/or operated by Kinder Morgan, carrying out all normal and incidental duties in the industry; and (vi) requiring Kinder Morgan to notify, in writing, every person or entity to which it distributed the Blacklist Notice to inform them that it

is rescinded, unlawful, and shall be of no force or effect; and (vii) granting such further relief as

the Court deems appropriate.

**T. PARKER HOST, INC.**

By: _____

Of Counsel

Hunter W. Sims, Jr. (VSB No. 09218)
Patrick H. O'Donnell (VSB No. 29637)
Clark J. Belote (VSB No. 87310)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Phone: (757) 624-3000
Fax:  (888) 360-9092
E-mail: hwsims@kaufcan.com
E-mail: phodonnell@kaufcan.com
E-mail: cjbelote@kaufcan.com

*Counsel for Plaintiff*

32