

# FEDERAL MARITIME COMMISSION
### Office of the Secretary
**800 North Capitol Street, N.W.**
**Washington, DC 20573-0001**

Phone: (202) 523-5725
Fax: (202) 523-0014
E-mail: Secretary@fmc.gov

June 29, 2016

Hunter W. Sims, Jr., Esq.
Kaufman & Canoles, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510

Re: Docket No. 16-14 - T. Parker Host, Inc. v. Kinder Morgan Liquids Terminals, LLC, et al.

Dear Mr. Sims:

This is to advise that the complaint which you filed on behalf of T. Parker Host, Inc. has been assigned Docket No. 16-14.

Service of the complaint was made upon respondent as of the above date and an answer is due to be filed with the Commission within twenty-five (25) days. The Commission's Rules of Practice and Procedure and other resources can be found at www.fmc.gov/resources/attorney-litigants.aspx.

Very truly yours,

Karen V. Gregory
Secretary

cc:     Office of Administrative Law Judges

**EXHIBIT**

3

```
(S     E     R     V     E     D)
(          JUNE 29, 2016          )
(FEDERAL MARITIME COMMISSION)
```

## FEDERAL MARITIME COMMISSION

## DOCKET NO.  16 - 14

## T. PARKER HOST, INC.

### v.

## KINDER MORGAN LIQUIDS TERMINALS, LLC, ET AL.

## NOTICE OF FILING OF COMPLAINT AND ASSIGNMENT

Notice is given that a complaint has been filed with the Federal Maritime Commission (Commission) by T. Parker Host, Inc., hereinafter "Complainant," against Kinder Morgan Liquids Terminals, LLC, Kinder Morgan Bulk Terminals, Inc., Kinder Morgan Services, LLC, Kinder Morgan Southeast Terminals, LLC, Kinder Morgan Virginia Liquids Terminals LLC, Kinder Morgan Materials Services, LLC, Kinder Morgan G.P., Inc., Kinder Morgan Operating L.P. "A", Kinder Morgan Operating L.P. "C", Kinder Morgan Operating L.P. "D", Kinder Morgan Transmix Company LLC, Kinder Morgan Energy Partners, Nassau Terminals, LLC, Kinder Morgan Terminals, and Kinder Morgan, Inc.,  hereinafter "Respondents."  Complainant states that it is a business engaged in providing ship's agency services to vessel owners, operators and charterers.  Complainant alleges that Respondents are operators of marine terminals.

Complainant alleges that by banning Complainant from entering on or coordinating port calls at all marine terminals owned or operated by Respondents, as well as informing Complainant's customers that as of July 1, 2016 Complainant has been banned from coordinating port calls at all marine terminals owned or operated by

Respondents, Respondents have violated the Shipping Act, 46 U.S.C. 41106, which states that marine terminal operators "may not give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any person; or unreasonably refuse to deal or negotiate."

Complainant requests that the Commission enter an order declaring the "Blacklist Notice" and/or Respondents' actions described in their complaint violate 46 U.S.C. 41106 and are unlawful and unenforceable, and further declaring that Complainant may continue to provide vessel agency services at Respondents' terminals as it currently does, and that Respondent be required to answer the charges made in the Complaint. Complainant also requests that after taking evidence and conducting a hearing, the Commission order Respondents to cease and desist from violation of the Shipping Act; to put in place lawful and reasonable practices to insure no continuing similar violations of the Shipping Act; to pay Complainant's reasonable attorney fees pursuant to 46 U.S.C. 41305(e); to pay monetary penalties for violating the Shipping Act pursuant to 46 U.S.C. 41107; and that the Commission make any further orders as it determines to be just and proper.

The full text of the complaint can be found in the Commission's Electronic Reading Room at www.fmc.gov/16-14.

This proceeding has been assigned to the Office of Administrative Law Judges. The initial decision of the presiding officer in this proceeding shall be issued by June 29, 2017, and the final decision of the Commission shall be issued by January 12, 2018.

Karen V. Gregory
Secretary

2

| S | E | R | V | E | D |
|---|---|---|---|---|---|
| | | June 29, 2016 | | | |
| FEDERAL | | MARITIME | | COMMISSION | |

## FEDERAL MARITIME COMMISSION

---

## DOCKET NO. 16-14

---

## T. PARKER HOST, INC.

### v.

## KINDER MORGAN LIQUIDS TERMINALS, LLC, ET AL.

---

## NOTICE OF ASSIGNMENT

---

The undersigned judge will conduct such hearings and conferences as may be necessary to resolve the issues and to issue an Initial Decision or dispositive ruling.


Clay G. Guthridge
Chief Administrative Law Judge

BEFORE THE FEDERAL MARITIME COMMISSION

_____

Docket No. 16 - __

_____

T. PARKER HOST, INC., COMPLAINANT

v.

KINDER MORGAN LIQUIDS
TERMINALS, LLC,

> Serve: CT Corporation System
> 4701 Cox Road
> Suite 285
> Glen Allen, VA 23060

KINDER MORGAN BULK
TERMINALS, INC.,

> Serve: CT Corporation System
> 4701 Cox Road
> Suite 285
> Glen Allen, VA 23060

KINDER MORGAN SERVICES LLC,

> Serve: CT Corporation System
> 4701 Cox Road
> Suite 285
> Glen Allen, VA 23060

KINDER MORGAN SOUTHEAST
TERMINALS, LLC,

> Serve: CT Corporation System
> 4701 Cox Road
> Suite 285
> Glen Allen, VA 23060

KINDER MORGAN VIRGINIA
LIQUIDS TERMINALS LLC

> Serve: CT Corporation System

1

**4701 Cox Road**
**Suite 285**
**Glen Allen, VA 23060**

**KINDER MORGAN MATERIALS**
**SERVICES, LLC,**

>    **Serve: CT Corporation System**
>    **4701 Cox Road**
>    **Suite 285**
>    **Glen Allen, VA 23060**

**KINDER MORGAN G.P., INC.**

>    **Serve: Corporation Service Company**
>    **Bank of America Center, 16th Floor**
>    **1111 East Main Street**
>    **Richmond, VA 23219**

**KINDER MORGAN OPERATING L.P. "A"**

>    **Serve: CT Corporation System**
>    **4701 Cox Road**
>    **Suite 285**
>    **Glen Allen, VA 23060**

**KINDER MORGAN OPERATING L.P. "C"**

>    **Serve: CT Corporation System**
>    **4701 Cox Road**
>    **Suite 285**
>    **Glen Allen, VA 23060**

**KINDER MORGAN OPERATING L.P. "D"**

>    **Serve: CT Corporation System**
>    **4701 Cox Road**
>    **Suite 285**
>    **Glen Allen, VA 23060**

**KINDER MORGAN TRANSMIX COMPANY, LLC**

>    **Serve: CT Corporation System**

2

4701 Cox Road
Suite 285
Glen Allen, VA 23060

**KINDER MORGAN ENERGY PARTNERS**

Serve: CT Corporation System
4701 Cox Road
Suite 285
Glen Allen, VA 23060

**NASSAU TERMINALS, LLC**

Serve:  CT Corporation System
1200 South Pine Island Road
Plantation, FL  33324

**KINDER MORGAN TERMINALS**

Serve: CT Corporation System
4701 Cox Road
Suite 285
Glen Allen, VA 23060

and

**KINDER MORGAN, INC.**

Serve: Kinder Morgan, Inc.
1001 Louisiana Street
Suite 1000
Houston, TX 77002

**Respondents.**

## VERIFIED COMPLAINT

Complainant, T. Parker Host, Inc. ("TPH"), by counsel, for its Complaint against Respondents, Kinder Morgan Liquids Terminals, LLC, Kinder Morgan Bulk Terminals, Inc., Kinder Morgan Services LLC, Kinder Morgan Southeast Terminals, LLC, Kinder Morgan Virginia Liquids Terminals LLC, Kinder Morgan Materials Services, LLC, Kinder Morgan G.P., Inc., Kinder Morgan Operating L.P. "A", Kinder Morgan Operating L.P. "C", Kinder Morgan Operating L.P. "D", Kinder Morgan Transmix Company, LLC, Kinder Morgan Energy Partners,

3

Nassau Terminals, LLC, Kinder Morgan Terminals, and Kinder Morgan, Inc., (collectively "Kinder Morgan" or "Respondents") states as follows:

## Nature of the Complaint

Kinder Morgan is an operator of marine terminals within the meaning of 46 U.S.C. §§ 40102 (14) and 41106. TPH is a family owned business engaged in providing ship's agency services to vessel owners, operators and charterers. Kinder Morgan has and continues to violate the Shipping Act of 1984, 46 U.S.C. § 41106, which states that marine terminal operators "may not give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any person; or unreasonably refuse to deal or negotiate." Kinder Morgan has informed TPH and customers of TPH, that as of July 1, 2016, TPH is banned from entering upon all marine terminals owned or operated by Kinder Morgan and banned from even coordinating port calls at all marine terminals owned or operated by Kinder Morgan.[1] Kinder Morgan has also informed TPH and its customers that any vessel that uses TPH, either directly or indirectly, for ship agency services will be barred from entering or ejected from all Kinder Morgan owned or operated marine terminals. Kinder Morgan has taken this extraordinary and unlawful action because a company affiliated with TPH, Host Terminals, Inc., has begun to successfully compete against Kinder Morgan for contracts to operate marine terminals. Kinder Morgan has acknowledged to TPH that the ban is in retaliation for Host Terminals, Inc. competing with Kinder Morgan.

## JURISDICTION

---

[1] Kinder Morgan has already instituted its unlawful ban of TPH from at least one of the marine terminals it owns and/or operates. See Exhibit 1 (photograph taken at Kinder Morgan marine terminal in Beaumont, Texas.)

1.      The Federal Maritime Commission (the "Commission") has jurisdiction over this matter because TPH is a "person" and Kinder Morgan is a "marine terminal operator" within the meaning of 46 U.S.C. § 41106 and 46 U.S.C. § 40102 (14) and the complained of actions of Kinder Morgan are violations of the Shipping Act.

2.      The Commission has jurisdiction to resolve cases involving alleged violations of the Shipping Act and other laws within the Commission's jurisdiction, pursuant to 46 U.S.C. § 41301. Such cases may be initiated by private parties or by the Commission.  This Complaint is filed within 3 years after the claim accrued.

## PARTIES

3.      Plaintiff T. Parker Host, Inc. is a Virginia corporation, licensed to do business in Virginia, providing full-service ship agency, with its principal place of business in Norfolk, Virginia.

4.      Respondent Kinder Morgan Liquids Terminals, LLC is a Delaware limited liability company, licensed to do business in Virginia, that owns and operates marine terminals, with its principal place of business in Houston, Texas.

5.      Respondent Kinder Morgan Bulk Terminals, Inc. is a Louisiana corporation, licensed to do business in Virginia, that owns and operates marine terminals, with its principal place of business in Houston, Texas.

6.      Respondent Kinder Morgan Services LLC is a Delaware limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

7.      Respondent Kinder Morgan Southeast Terminals LLC is a Delaware limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

8.    Respondent Kinder Morgan Virginia Liquids Terminals is a Delaware limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

9.    Respondent Kinder Morgan Materials Services, LLC is a Pennsylvania limited liability company, licensed to do business in Virginia with its principal place of business in Houston, Texas.

10.    Respondent Kinder Morgan G.P., Inc. is a Delaware corporation, licensed to do business in Virginia with its principal place of business in Houston, Texas.

11.    Respondent Kinder Morgan Operating L.P. "A" is a Delaware limited partnership licensed to do business in Virginia with its principal place of business in Houston, Texas.

12.    Respondent Kinder Morgan Operating L.P. "C" is a Delaware limited partnership licensed to do business in Virginia with its principal place of business in Houston, Texas.

13.    Respondent Kinder Morgan Operating L.P. "D" is a Delaware limited partnership licensed to do business in Virginia with its principal place of business in Houston, Texas.

14.    Respondent Kinder Morgan Transmix Company, LLC is a Delaware limited liability company licensed to do business in Virginia with its principal place of business in Houston, Texas.

15.    Upon information and belief, Respondent Kinder Morgan Energy Partners is a limited partnership, with its principal place of business in Houston, Texas and/or the fictitious name of an entity or several entities doing business as Kinder Morgan Energy Partners, including owning/and or operating marine terminals.[2] Respondent Nassau Terminals LLC is a Delaware

---

[2] Because TPH is unable at this time to establish which entities actually own and/or operate the marine terminals at issue, TPH reserves the right to amend or move for leave to amend this Complaint to reflect the appropriate corporate Respondents behind Kinder Morgan's actions.

limited liability company with its principal place of business in Houston, Texas, and operating the marine terminal in Fernandina Beach, Florida.

16.     Upon information and belief Respondent Kinder Morgan Terminals is the fictitious name of an entity or several entities doing business as Kinder Morgan Terminals, including owning/and or operating marine terminals.[3]

17.     Upon information and belief, Respondent Kinder Morgan, Inc. is the parent corporation of all Kinder Morgan entities, with its principal place of business in Houston, Texas.[4]

18.     The Respondents, or one or more of them, manage, own and/or operate the terminals from which they have blacklisted  TPH. The Complaint will refer to those entities that manage, own and/or operate the terminals from which the Respondents blacklisted TPH effective July 1, 2016, collectively, jointly and severally as "Kinder Morgan."

## STATEMENT OF FACTS

### T. Parker Host, Inc.

19.     TPH is a shipping agency, serving vessels at several marine terminals, primarily on the East and Gulf Coasts of the United States. A shipping agency or shipping agent is the designated person or agency held responsible for coordinating and/or handling shipments and cargo, and the general interests of its customers, at ports and harbors worldwide, on behalf of ship owners, managers, and charterers. Every port call requires a nominated agent responsible for

---

[3] Because TPH is unable at this time to establish which entities actually own and/or operate the marine terminals at issue, TPH reserves the right to amend or move for leave to amend this Complaint to reflect the appropriate corporate Respondents behind Kinder Morgan's actions.

[4] Because TPH is unable at this time to establish which entities actually own and/or operate the marine terminals at issue, TPH reserves the right to amend or move for leave to amend this Complaint to reflect the appropriate corporate Respondents behind Kinder Morgan's actions.

the operational and financial coordination between the vessel itself, the owner/operator of the vessel, and the port or terminal.

20.    Acting as the local representative of the principal, the agent provides local knowledge and expertise and ensures that the principal's requirements are performed with the utmost efficiency and dispatch. The ship agent, as enshrined by international maritime convention, is primarily the servant of the master and owners of the vessel, the "principal."

21.    In addition to serving as a ship's agent, TPH serves as protective agents, supervises the charterer's agent and monitors all aspects of port call operations including hold cleaning, loading and unloading cargo, positioning, documentation review, and delivery time verification. TPH is a family-owned business that has operated in Hampton Roads for over 90 years and garnered long-term business relationships.

22.    TPH handles over 3,600 vessels per year. TPH is the largest dry bulk agent in the United States and also works extensively with tankers carrying liquid cargo. TPH is a certified member of the Association of Ship Brokers & Agents and longstanding member of the Baltic and International Maritime Council. In November 2015, TPH was named International Bulk Ships Agent of the Year by the International Bulk Journal.

23.    TPH also provides vessel attendance, customs clearance, cargo documentation, and husbandry services.

24.    TPH generally receives appointments to act as vessel agent on a continuing basis for various vessels and vessel operators. The contracts entered into by TPH with vessels are part of a larger working relationship and business expectancy that TPH has with the vessels and shippers. TPH has established relationships with its customers that extend many years. Those

8

customers then use TPH as their agent for each call to local terminals, including those owned and/or operated by Kinder Morgan.

25.    To perform its work as agent, it is essential for TPH to access its clients' vessels when docked at marine terminals. Historically, TPH has always been allowed access to the Kinder Morgan owned or operated terminals.

### Kinder Morgan

26.    The larger Kinder Morgan corporate family is the largest energy infrastructure company in North America. Kinder Morgan formed as a result of Richard Kinder's severance package from Enron and his acquisition of the Enron division that eventually became Kinder Morgan – Enron Liquid Pipelines LLP. It now owns an interest in and/or operates approximately 84,000 miles of pipelines, as well as numerous marine terminals.

27.    Kinder Morgan is the largest independent terminal operator in North America, providing a network of approximately 180 terminals.

28.    Relevant here, Kinder Morgan owns and/or operates thirty-seven terminals serviced by TPH, including four terminals in the Tidewater region of Virginia. Of these thirty-seven terminals, Kinder Morgan owns an interest in twenty-six terminals. Kinder Morgan operates, on behalf of marine terminal owners, eleven terminals serviced by TPH throughout the East and Gulf Coasts.

29.    Kinder Morgan has never lodged any complaints about TPH's service as a vessel agent at the terminals Kinder Morgan owns or operates.

30.    TPH and Kinder Morgan are not competitors in the agency business because TPH does not manage marine terminals, and Kinder Morgan does not serve as a vessel agent.

### Host Terminals, Inc.

9

31.    TPH's affiliated entity, Host Terminals, Inc.[5], provides marine terminal operations and stevedoring, much like Kinder Morgan. Host Terminals currently operates or manages labor at several U.S. East and Gulf Coast locations, handling dry bulk, breakbulk, heavy lift and project cargoes, and container moves.

32.    Host Terminals, Inc.'s participation in the operation of marine terminals remains relatively modest in the marketplace, particularly in comparison to Kinder Morgan's vast marine terminal operations.

### Kinder Morgan's Unreasonable, Discriminatory and Predatory Refusal to Deal

33.    Over the last 15 years, TPH has amicably performed its ship agency business through Kinder Morgan's terminal networks.

34.    TPH has always complied with all safety, insurance, and operational requirements for Kinder Morgan facilities.

35.    On or about April 29, 2016, TPH began to hear rumors that Kinder Morgan planned to blacklist TPH from entering the marine terminals owned and/or operated by Kinder Morgan, the result of which would be to deny TPH access to its clients' vessels and thus prevent TPH from conducting its business.

36.    On May 3, 2016, Host Terminals, Inc. learned that it was the successful bidder for the terminal operating contract for the Sparrows Point Terminal in Baltimore, Maryland, which had previously been managed by Kinder Morgan.

37.    The next day, May 4, 2016, Kinder Morgan began distributing the letter attached as **Exhibit 2** to TPH's customers, TPH's competitors, as well as TPH's various regional offices ("the Blacklist Notice"). Kinder Morgan implemented the boycott and issued the Blacklist

---

[5] Host Terminals, Inc. is a separate Virginia corporate entity from TPH. TPH owns 75% of the outstanding shares of stock of Host Terminals, Inc.

Notice in retaliation for Host Terminals, Inc.'s competing with Kinder Morgan for marine terminal operation contracts like the Sparrows Point contract in Baltimore.

38.     By the letter, Kinder Morgan announced a new "policy regarding vessels that call on any Kinder Morgan Terminal and require use of vessel agents." The Blacklist Notice requires Kinder Morgan to approve all vessel agents, port agents, protective agents, and subagents before an agent can coordinate a port call or obtain access to vessels, effective July 1, 2016. The Blacklist Notice states that "[a]ny attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth . . . ." Kinder Morgan claims to "reserve[] the right and sole discretion to reject or approve any Agent."

39.     In addition, the Blacklist Notice provides that "approved Agents shall NOT act as a subagent for a non-approved agent." Accordingly, Kinder Morgan extended its threat to agents who happened to make the Approved Agents List, to ensure that TPH cannot even indirectly do work as a sub-agent.

40.     By its terms, the Blacklist Notice applies to any terminal "owned or operated by Kinder Morgan." Thus, it purportedly applies to those terminals that Kinder Morgan only leases from the owner.

41.     The Blacklist Notice states: "Kinder Morgan must approve of any vessel agent, port agent, protective agent or subagent ("Agent"), **whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party**, that conducts the following activities: **1) coordinates** the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from

11

the facility or dock; **or 2) Obtains access to the vessel** while the vessel is moored to a Kinder Morgan owned or operated facility or dock." **Exhibit 2.**

42.   That is, Kinder Morgan has asserted the right to veto the contracts and arrangements between shippers and their agents. Kinder Morgan asserts that *Kinder Morgan*, by its own fiat, must "approve" of the agents *appointed by other entities whose vessels and port calls are actually be handled by agents* like TPH. By the terms of the Blacklist Notice, Kinder Morgan has asserted a unilateral ban, not only on TPH's ability to physically access vessels moored at Kinder Morgan marine terminals, but also on *coordinating* the port calls. Coordinating a port call involves almost no activity on Kinder Morgan owned and/or operated property. Rather, it is the logistical work of scheduling, phone calls, emails, and the like to ensure that tugboats, harbor pilots, railroads, barges, and all of the other necessary services are available, timely, and as contracted.

43.   Importantly, the right to appoint a vessel or port agent is most often included in the contractual terms of the charterer who actually contracts for the ocean freight of its cargo. These charterers are TPH's primary customers. By issuing the Blacklist Notice, Kinder Morgan aims to not only destroy TPH, but to unilaterally control which agents "the cargo owner, shipper, receiver, charterer, vessel owner, or other party" can appoint to service their vessels.

44.   Accompanying Kinder Morgan's policy was a list of 63 "Approved Agents" ("the Approved Agents List"). Kinder Morgan intentionally and wrongfully excluded TPH from the Approved Agents List, in order to blacklist TPH from serving its clients at Kinder Morgan terminals. The Blacklist Notice's terms were only pretext for excluding TPH.

45.   The Blacklist Notice applies to facilities Kinder Morgan owns and to facilities it operates. Upon information and belief, there was no vetting process or criteria for inclusion on

12

the list. Kinder Morgan has never complained about TPH's service. TPH has consistently maintained an excellent safety track record.[6]

46.     Instead, Kinder Morgan has since acknowledged that its blacklisting of TPH was a result of Host Terminal, Inc.'s competing with Kinder Morgan in the terminal management market and TPH's hiring of former employees of Kinder Morgan. Upon and information belief, TPH was the only vessel agent conducting a significant level of business at Kinder Morgan terminals who was blacklisted.

47.     Kinder Morgan's sole aim with the Blacklist Notice was to injure the business of TPH and to stop Host Terminals, Inc. from competing in the marine terminal business. Kinder Morgan's references to safety and insurance are only post-hoc,  pre-textual reasons for its actions.

48.     If TPH is denied access to, and coordination at, terminals owned and/or operated by Kinder Morgan, TPH will not be able to provide services to its customers' ships docked at all thirty-seven Kinder Morgan terminals, and will be unable to perform under its existing contracts and appointments for its customers. As a result, TPH will suffer a tremendous and irreversible loss of customers and business. From 2013 through May 2016, TPH has earned almost $4.5 million in fees from serving vessels at Kinder Morgan owned and/or operated terminals. TPH stands to lose an average of roughly $2,200,000 in revenue annually as a result of the illegal Blacklist Notice.

---

[6] Although Kinder Morgan has taken its frustration from losing the Sparrows Point contract out on TPH's affiliate, Kinder Morgan Bulk Terminals, Inc.'s former landlord at Sparrows Point recently secured a judgment for $15,555,884 against it for failing to deploy hurricane tie-downs on bridge crane in the face of a tornado watch, "[d]espite its own procedures and federal regulations which require preventative measures during high winds." RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc., 609 F. App'x 731, 735 (4th Cir. 2015).

49.    Typically, once customers start using an agent, they rarely switch. Kinder Morgan knows this. That is why Kinder Morgan is blacklisting TPH to beat TPH into submission in an effort to have Host Terminals, Inc. cease competing with Kinder Morgan and operating its marine terminal business.

50.    Since Kinder Morgan's announcement and distribution of the Blacklist Notice, TPH has contacted Kinder Morgan to inquire why it was omitted from the Approved Agents List. Kinder Morgan refused to provide any details on why TPH was not included on the Approved Agents List. Kinder Morgan only referenced a goal to include companies on the Approved Agents List with whom Kinder Morgan can "create synergies" – a reference to the fact that Host Terminals, Inc. competes with Kinder Morgan and won the Baltimore contract previously held by Kinder Morgan.

51.    TPH has since formally requested to be removed from the Blacklist. Kinder Morgan has denied that request based on Host Terminals, Inc.'s competition with Kinder Morgan. TPH's competitors learned of the Blacklist Notice and have directly contacted TPH's customers to solicit business.

52.    Kinder Morgan has insisted on enforcing the Blacklist Notice, beginning on July 1, 2016. In addition, Kinder Morgan has already taken steps to ban TPH and implement the Blacklist Notice. Attached as **Exhibit 1** is a photograph taken June 10, 2016 at Kinder Morgan's terminal in Beaumont, Texas. It states "T. PARKER HOST, INC. IS NOT ALLOWED ON Kinder Morgan Property If they show up refer them to call Hans Luetkemeier at (504) – 620-4628 Effective 5-19-2016."

53.    In further attempt to resolve the matter, TPH set up a meeting with Kinder Morgan at its headquarters in Houston, Texas on June 3, 2016. In that meeting, President of

14

Terminals for Kinder Morgan, John Schlosser and Kinder Morgan Chief Commercial Officer Randall Maffett made it very clear why TPH was blacklisted – competition from Host Terminals, Inc.'s terminal business supposedly cost Kinder Morgan over $100 million investments, over $35 million in revenue, and a $1.00 per share in its stock price. Kinder Morgan said that because of Host Terminals, Inc.'s competition with Kinder Morgan, TPH had to "pay for it."

54.     Kinder Morgan's actions are plainly anti-competitive, illegal, tortious, threatening, intimidating, defamatory, in violation of the standard practices of the industry, unfair, undue, and overreaching.

55.     Notwithstanding, TPH customers want to continue to do business with TPH. However, to ensure they have ship's agents after July 1, 2016, TPH's customers have advised that they will have to make arrangements to use other agents in the near future.

## SHIPPING ACT VIOLATIONS

56.     TPH incorporates the allegations set forth in paragraphs 1-55 of this Complaint, as if set forth fully herein.

57.     Kinder Morgan owns and/or operates numerous bulk and liquids marine terminals along the East and Gulf Coasts.

58.     Kinder Morgan is engaged in the United States in the business of providing wharfage, dock, warehouse, or other terminal facilities in connection with common carriers.

59.     Thus, Kinder Morgan is a marine terminal operator.

60.     Under the Shipping Act of 1984, marine terminal operators "may not . . . unreasonably discriminate in the provision of terminal services to, a common carrier or ocean tramp; give any undue or unreasonable preference or advantage or impose any undue or

unreasonable prejudice or disadvantage with respect to any person; or unreasonably refuse to deal or negotiate." 46 U.S.C. § 41106.

61.    By imposing the Blacklist Notice, Kinder Morgan has unreasonably discriminated in the provision of terminal services, intentionally imposed an undue and unreasonable prejudice and disadvantage on TPH, and unreasonably refused to deal or negotiate with TPH. TPH will no longer be able to perform under its vessel agency appointments or generally conduct its business as a direct result of Kinder Morgan's exclusionary policy.

62.    TPH and the entities on the Approved Agents List are similarly situated as competitors in the market of vessel agency. By intentionally excluding TPH from the Approved Agents List, Kinder Morgan accorded TPH and the entities on the Approved Agents List different treatment, not justified by differences in transportation factors.

63.    Kinder Morgan's intentional exclusion of TPH has resulted, and will continue to result in, harm and damage to TPH by preventing it from performing under its agency appointments and contracts and otherwise conducting its business.

64.    There is an actual controversy between Kinder Morgan and TPH. If Kinder Morgan implements the Blacklist Notice on July 1, 2016, as it has repeatedly stated it will do, TPH will be barred from entering all terminals owned or managed by Respondents and it will thereby be barred from providing its services to its customers. TPH will irreparably lose numerous customers and business, as a direct result of Kinder Morgan's unreasonable and unlawful policy.

## REQUEST FOR ORAL HEARING

65.    TPH hereby requests an oral hearing in a location as close to Norfolk, Virginia as practicable.

## REQUEST FOR RELIEF

66.    The Commission should enter an order declaring that the Blacklist Notice and/or Respondents' actions described herein violate 46 U.S.C. § 41106 and are unlawful and unenforceable, and further declaring that TPH may continue to provide vessel agency services at Kinder Morgan terminals as it currently does.

67.    Complainant requests that respondent be required to answer the charges made in this Complaint; that, after taking evidence and conducting a hearing, the Commission order Respondent(s): to cease and desist from violation of the Shipping Act; to put in place lawful and reasonable practices to insure no continuing similar violations of the Shipping Act; to pay Complainant's reasonable attorney fees pursuant to 46 U.S.C. § 41305(e); to be required to pay monetary penalties for violating the Shipping Act pursuant to 46 U.S.C. § 41107; and that the Commission make any further orders as it determines to be just and proper.

**T. PARKER HOST, INC.**

By: _____
David F. Host, Chairman and CEO

## VERIFICATION

COMMONWEALTH OF VIRGINIA

AT LARGE, to wit:

David F. Host, being personally known to me, first duly sworn on oath before me this day in the City of Norfolk, Virginia, U.S.A., deposes and states that he is the Chairman and Chief Executive Officer of Complainant, T. Parker Host, Inc., and is the person who signed the foregoing Complaint; that he has read the Complaint and that the facts stated therein, upon his own information and upon information received from others, affiant believes to be true.

Subscribed and sworn to before me, a notary public in and for the Commonwealth of Virginia this 20th day of June, 2016.

```
CAITLIN R. MAIEWSKI
NOTARY PUBLIC
REG. #7656794
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES DEC. 31. 2019
```

[seal]_____

(Notary Public) _Caitli Maiule_

My Commission expires ___12/31/2019___

14875017v1

Of counsel for T. Parker Host, Inc.

Hunter W. Sims (VSB No. 9218)
Patrick H. O'Donnell (VSB No. 29637)
Clark J. Belote (VSB No. 87310)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3000
Facsimile:  (888) 360-9092
Email:  hwsims@kaufcan.com
Email:  phodonnell@kaufcan.com
Email:  cjbelote@kaufcan.com

*Counsel for Complainant*









# APPROVED VESSEL AGENCY LIST

### Effective July 1, 2016

ACGI Shipping, Inc.
American Marine
Anders Williams Shipping Agency
Atlantic Ship Agencies
Aztec Maritime Services, Inc.
Bertel Shipping Company, Inc.
Biehl & Co., LP
Blue Water Shipping Company
Bulbous Environmental & Logistics
Capes Shipping Agencies
Cascade Marine Agencies
CB Agencies
Celtic International Shipping Agency
Cita Logistics LLC
Colley West Shipping Ltd.
Compass Marine Services, Inc.
Davis Ship Agencies
Empire Shipping Agency
Fednav International, Ld.
Fillette Green & Company
GAC Shipping (USA), Inc.
General Maritime Transportation Services, Inc.
General Steamship Corporation, Ltd.
Gulf Harbor Shipping, LLC
Gulf Sunrise Agency LLC
Inchcape Shipping Services
International Chartering Services, Ltd.
Interocean Steamship Corporation
James E. Curran Co., Inc.
John S. Connor, Inc.
K3 Maritime Agency, Inc.
LBH (USA)
Lighthouse Shipping Agency

Maritime Endeavors Shipping Co., Ltd.
Marserve, Inc.
Mason Agency, Ltd.
Mentz Maritime Agency, Inc.
Merit Steamship Agency, Inc.
Moran-Gulf Shipping Agency
Moran Shipping Agencies, Inc.
Navitrans Shipping Agencies, Inc.
New England Shipping Company, Inc.
Nord-Sud Shipping, Inc.
North American Shipping Agencies
Norton Lilly International
Nova International Shipping Services
Pacific Northwest Ship and Cargo Services
Promar Agency
Ramsay Agencies, Inc.
Riley Sherman Shipping Agency, Inc.
A.R. Savage and Son, LLC
Sea and Land Shipping, Inc.
Seaport Hub Agencies, Inc.
Seatrade Reefer Chartering
Southport Agencies, Inc.
Sparrows Point Ship Agency, Ltd.
Terminal Shipping Company, Inc.
Texas Marine Agency, Inc.
Transmarine Navigation Corporation
Transversal Shipping Company
Valls Shipping Company
Wilhelmsen Ships Service
Wilmington Shipping Company

**EXHIBIT**

**1**



May 04, 2016

To our Valued Customers and Industry Partners:

Effective July 1, 2016, please note the following policy regarding vessels that call on the Wilmington Terminal and require the use of vessel agents:

Kinder Morgan must approve of any vessel agent, port agent, protective agent, or subagent ("Agent"), whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party, that conducts the following activities:

    1) Coordinates the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; or

    2) Obtains access to the vessel while the vessel is moored to a Kinder Morgan owned or operated facility or dock.

Approved Agents may be required to submit proper forms of insurance as required by KMT, must be in a possession of a valid Transportation Workers Identification Card (TWIC) when visiting the facility, must agree to comply with all of Kinder Morgan's dock and safety policies, and must adhere to any other facility specific requirements. Further, approved Agents shall NOT act as a subagent for a non-approved Agent.

Any attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent.

Kinder Morgan is committed to operating our facilities in a safe manner, and we appreciate your cooperation with this agency policy. Please contact the respective Kinder Morgan Terminal Manager should you have any questions regarding the policy.

Sincerely,

KINDER MORGAN
TERMINALS

**KINDER MORGAN**

May 04, 2016

To our Valued Customers and Industry Partners:

Effective July 1, 2016, please note the following policy regarding vessels that call on the Pier IX Terminal and require the use of vessel agents:

Kinder Morgan must approve of any vessel agent, port agent, protective agent, or subagent ("Agent"), whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party, that conducts the following activities:

1) Coordinates the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; or

2) Obtains access to the vessel while the vessel is moored to a Kinder Morgan owned or operated facility or dock.

Approved Agents may be required to submit proper forms of insurance as required by KMT, must be in a possession of a valid Transportation Workers Identification Card (TWIC) when visiting the facility, must agree to comply with all of Kinder Morgan's dock and safety policies, and must adhere to any other facility specific requirements. Further, approved Agents shall NOT act as a subagent for a non-approved Agent.

Any attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent.

Kinder Morgan is committed to operating our facilities in a safe manner, and we appreciate your cooperation with this agency policy. Please contact the respective Kinder Morgan Terminal Manager should you have any questions regarding the policy.

Sincerely,



**KINDER MORGAN**
TERMINALS



May 04, 2016

To our Valued Customers and Industry Partners:

Effective July 1, 2016, please note the following policy regarding vessels that call on the Kinder Morgan South Hill and Norfolk Terminal(s) and require the use of vessel agents:

Kinder Morgan must approve of any vessel agent, port agent, protective agent, or subagent ("Agent"), whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party, that conducts the following activities:

1) Coordinates the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; or

2) Obtains access to the vessel while the vessel is moored to a Kinder Morgan owned or operated facility or dock.

Approved Agents may be required to submit proper forms of insurance as required by KMT, must be in a possession of a valid Transportation Workers Identification Card (TWIC) when visiting the facility, must agree to comply with all of Kinder Morgan's dock and safety policies, and must adhere to any other facility specific requirements. Further, approved Agents shall NOT act as a subagent for a non-approved Agent.

Any attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent.

Kinder Morgan is committed to operating our facilities in a safe manner, and we appreciate your cooperation with this agency policy. Please contact the respective Kinder Morgan Terminal Manager should you have any questions regarding the policy.

Sincerely,

Deanna Bell

Deanna Bell
Terminal Mgr., South Hill / Norfolk terminal
Deanna_bell@kindermorgan.com
757-494-1640 opt. 2

**KINDER MORGAN**
TERMINALS

**KINDER⚡MORGAN**

May 4, 2016

To our Valued Customers and Industry Partners:

Effective July 1, 2016, please note the following policy regarding vessels that call on any Kinder Morgan Terminal and require the use of vessel agents:

Kinder Morgan must approve of any vessel agent, port agent, protective agent, or subagent ("Agent"), whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party, that conducts the following activities:

  1) Coordinates the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; or

  2) Obtains access to the vessel while the vessel is moored to a Kinder Morgan owned or operated facility or dock.

Approved Agents may be required to submit proper forms of insurance as required by KMT, must be in a possession of a valid Transportation Workers Identification Card (TWIC) when visiting the facility, must agree to comply with all of Kinder Morgan's dock and safety policies, and must adhere to any other facility specific requirements. Further, approved Agents shall NOT act as a subagent for a non-approved Agent.

Any attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent.

Kinder Morgan is committed to operating our facilities in a safe manner, and we appreciate your cooperation with this agency policy. Please contact the respective Kinder Morgan Terminal Manager should you have any questions regarding the policy.

Sincerely,

Hans Luetkemeier
Director of National Accounts – Dry Cargo
3500 N. Causeway Blvd., Suite 210
Metairie, LA 70002
Office Direct 504-620-4628
Email: Hans_Luetkemeier@kindermorgan.com

**KINDER⚡MORGAN**
TERMINALS



May 4, 2016

To our Valued Customers and Industry Partners:

Effective July 1, 2016, please note the following policy regarding vessels that call on any Kinder Morgan Terminal and require the use of vessel agents:

Kinder Morgan must approve of any vessel agent, port agent, protective agent, or subagent ("Agent"), whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party, that conducts the following activities:

    1) Coordinates the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; or

    2) Obtains access to the vessel while the vessel is moored to a Kinder Morgan owned or operated facility or dock.

Approved Agents may be required to submit proper forms of insurance as required by KMT, must be in a possession of a valid Transportation Workers Identification Card (TWIC) when visiting the facility, must agree to comply with all of Kinder Morgan's dock and safety policies, and must adhere to any other facility specific requirements. Further, approved Agents shall NOT act as a subagent for a non-approved Agent.

Any attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent.

Kinder Morgan is committed to operating our facilities in a safe manner, and we appreciate your cooperation with this agency policy. Please contact the respective Kinder Morgan Terminal Manager should you have any questions regarding the policy.

Sincerely,



# KINDER MORGAN

May 04, 2016

To our Valued Customers and Industry Partners:

Effective July 1, 2016, please note the following policy regarding vessels that call on the ___Nassau_____ Terminal and require the use of vessel agents:

Kinder Morgan must approve of any vessel agent, port agent, protective agent, or subagent ("Agent"), whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party, that conducts the following activities:

1) Coordinates the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; or

2) Obtains access to the vessel while the vessel is moored to a Kinder Morgan owned or operated facility or dock.

Approved Agents may be required to submit proper forms of insurance as required by KMT, must be in a possession of a valid Transportation Workers Identification Card (TWIC) when visiting the facility, must agree to comply with all of Kinder Morgan's dock and safety policies, and must adhere to any other facility specific requirements. Further, approved Agents shall NOT act as a subagent for a non-approved Agent.

Any attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent.

Kinder Morgan is committed to operating our facilities in a safe manner, and we appreciate your cooperation with this agency policy. Please contact the respective Kinder Morgan Terminal Manager should you have any questions regarding the policy.

Sincerely,

# KINDER MORGAN
TERMINALS



May 4, 2016

To our Valued Customers and Industry Partners:

Effective July 1, 2016, please note the following policy regarding vessels that call on any Kinder Morgan Terminal and require the use of vessel agents:

Kinder Morgan must approve of any vessel agent, port agent, protective agent, or subagent ("Agent"), whether nominated or appointed by the cargo owner, shipper, receiver, charterer, vessel owner, or other party, that conducts the following activities:

1) Coordinates the port call to/from a Kinder Morgan owned or operated facility or dock, including coordination of vessel movement within the port and shifting to/from the facility or dock; or

2) Obtains access to the vessel while the vessel is moored to a Kinder Morgan owned or operated facility or dock.

Approved Agents may be required to submit proper forms of insurance as required by KMT, must be in a possession of a valid Transportation Workers Identification Card (TWIC) when visiting the facility, must agree to comply with all of Kinder Morgan's dock and safety policies, and must adhere to any other facility specific requirements. Further, approved Agents shall NOT act as a subagent for a non-approved Agent.

Any attempt to circumvent this agency policy may result in Kinder Morgan rejecting a vessel calling on a Kinder Morgan owned or operated facility or dock, ceasing cargo operations, or requiring the vessel to immediately vacate the berth at the vessel/agent/carrier's sole expense. Kinder Morgan reserves the right and sole discretion to reject or approve any Agent.

Kinder Morgan is committed to operating our facilities in a safe manner, and we appreciate your cooperation with this agency policy.  Please contact the respective Kinder Morgan Terminal Manager should you have any questions regarding the policy.

Sincerely,

Hans Luetkemeier
Director of National Accounts – Dry Cargo
3500 N. Causeway Blvd., Suite 210
Metairie, LA  70002
Office Direct 504-620-4628
Email:  Hans_Luetkemeier@kindermorgan.com



## BEFORE THE FEDERAL MARITIME COMMISSION

_____

**Docket No. 16-____**

_____

**T. PARKER HOST, INC.,**

      **Complainant,**

v.

**KINDER MORGAN, INC., et al.**

      **Respondents.**

## NOTICE OF APPEARANCE OF HUNTER W. SIMS, JR. AS COUNSEL FOR T. PARKER HOST, INC.

Pursuant to § 502.21 of the Rules of Practice and Procedure before the Federal Maritime Commission, the undersigned attorney at the law firm of Kaufman & Canoles, 150 W. Main Street, Suite 2100, Norfolk, Virginia hereby gives notice of his appearance as counsel for Complainant, T. Parker Host, Inc. I hereby certify that I am admitted to practice in the courts of the Commonwealth of Virginia, the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the United States District Court for the Eastern District of Virginia.

I request to be informed of service of notices, orders and decisions in this proceeding by electronic mail: hwsims@kaufcan.com

1

T. PARKER HOST, INC.

By: _____

Of Counsel

Hunter W. Sims (VSB No. 9218)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3000
Facsimile: (888) 360-9092
Email: hwsims@kaufcan.com

*Counsel for Complainant, T. Parker Host, Inc.*

14879864v1                                          2